JULIA C. BRUMMEL, Plaintiff, *v.* L. F. DIETZ AND ASSOCIATES, INC., et al., Defendants.

Supreme Court, Trial Term, New York County, November 28, 1945.

*Harold L. Lipton* for plaintiff.

*Kenneth H. Guild* for defendants.

BLAIR, J. This is an action under the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*) for overtime wages alleged to have been either calculated and paid according to an erroneous formula or to have been withheld entirely upon the ground, challenged by plaintiff, that she at the time in question occupied an executive or administrative position exempting the defendant from the duty to pay her overtime. The claims divide themselves along chronological lines as follows: (1) from May 1, 1942, to April 30, 1943 (excluding a brief period of nonemployment), plaintiff avers she was paid overtime but according to an erroneous formula; (2) from May 1, 1943, to March 31, 1944, she avers that she worked many hours overtime but was not paid for it since the company took the position that she was occupying an executive or administrative position thus relieving them,

under section 13 of the Act (U. S. Code, tit. 29, § 213), from the duty to pay overtime; and (3) from April 1, 1944, until she left the company's employ on August 8, 1944, when overtime pay was withheld for the same reasons as during the second period, with the qualification that during this third period her employer was a New Jersey corporation of the same name as the New York corporation for which she had worked in the first and second periods.

As to the first period, the decision must be in favor of the defendant. Her contract of employment provided for a salary of $25 per week of forty hours, with overtime on an " irregular hour basis ". This term is defined in paragraph 12 of defendants' Exhibit N, and the formula there set up coincides so closely with the illustration in defendants' Exhibits B-1 and C as to leave no room for doubt as to the basis on which she agreed that overtime should be calculated. Her naive attempt to show that the formula in Exhibits B-1 and C was so obscure that nobody could explain it, I reject as irrelevant. The criticism is really against the United States Department of Labor, Wage and Hour Division, who originated the formula thereafter adopted by the defendants as their own. The formula was expressly upheld as fair in *Snyder* v. *Wessner* (55 F. Supp. 971) and was upheld by implication in *Walling* v. *Belo Corp.* (316 U. S. 624). The essence of the formula is that when the hours actually worked in each week become known, the basic pay is divided by them to ascertain the hourly rate. Then this rate is applied to the first forty hours and an overtime rate of one and one-half times the normal rate is applied to so much of the hourage as exceeds forty. It is true that the more excessive the overtime hours, the lower the pay per hour. Elements of unfairness may inhere in this, but it seems to have the sanction of the Department of Labor and of the United States Supreme Court, and I should be exceeding my powers if I voiced gratuitous criticism of either body.

Attempts were made while Mr. Murray was on the stand to show that the basic agreed wage — $25 for a forty-hour week — meant pay for a regular number of hours, and hence required the calculation of overtime in the manner set forth in paragraph 11 of defendants' Exhibit N. Pay-check vouchers used when plaintiff was paid every two weeks containing an entry " Regular Hours 80 " were offered for the same purpose. But in my opinion the illustrative calculation forming part of defendants' Exhibits B-1 and C so completely coincides with that in paragraph 12 of defendants' Exhibit N as to preclude further argu-

ment. There can consequently be no recovery for the first period.

Throughout the second period, the plaintiff punched a time clock but the records were lost, or at any rate not produced. The defendants apparently took May 1, 1943, as an arbitrary date and concluded ex parte that from then on the plaintiff had attained the dignity of an exempt status and was not entitled to overtime. I find no event narrated in the record to justify this audacious conclusion. The plaintiff, it is true, acted as a competent alter ego of Mr. Gartner, her boss, when he was away; and with a display of initiative and resourcefulness such as one would expect to find in any truly intelligent clerk, did the things he did so that the company suffered no slowdowns or loss of efficiency when he was absent. But when her acts are analyzed and weighed, and the milieu in which they were performed kept in mind, they shrink greatly in importance, and fall far short of constituting an ascent to executive or administrative status. In the second period she should have been paid for 1,928 hours of overtime. Of these 1,175 were served when she was being paid at the rate of $87.50 for eighty hours; 565, when the rate was $104.17 for eighty hours; and 188, when the rate was $125 for eighty hours (plaintiff's Exhibit 2). When we apply the formula in paragraph 12 of defendants' Exhibit N, the total sum which should have been paid to her is $2,600.33. She was actually paid $2,056.27. The sum wrongfully withheld amounts to $544.06. Since this sum must be doubled under section 16 of the Statute (U. S. Code, tit. 29, § 216), the plaintiff is entitled to judgment for $1,088.12 for sums wrongfully withheld during the second period. Counsel fees are fixed at $600, which I find fair and reasonable under all the circumstances.

During the third period the plaintiff worked in New Jersey for the New Jersey corporation of the same name as the New York corporation. Her boss, Mr. Gartner, had died March 28, 1944. A very substantial portion of his duties fell or were placed on her shoulders. She appears to have readily assumed the burden and discharged the responsibilities imposed upon her. Not only within the office but to third parties as well she got herself known as purchasing agent and personnel director. While office precedents limited her choice of dealers from whom to buy supplies, yet the fact remains that in all or substantially all cases, her initials sufficed for the execution of a purchase order.

There is a further obstacle to her recovery of anything for the third period. She failed to prove the rendering of overtime

services by a fair preponderance of the evidence. The weight of the evidence, from the mouths of witnesses who testified unequivocally and with ample detail to add conviction to their stories, is that she did not work overtime after April 1, 1944. The falsity of her own story was demonstrated by, *inter alia,* her testimony that she spent July 4, 1944, in New Orleans (proceeding down by plane and back by train), and yet had verified a bill of particulars in which she stated that she worked thirty-two hours overtime in the week ending July 7, 1944. When confronted with the unlikelihood, if not impossibility, of the bill being true, she admitted she must have been mistaken.

In accordance with the foregoing opinion, of the findings of fact submitted by the plaintiff, I approve Nos. 1–7, 9, 12, 15, 18, 21, 24, 27, 30, 37 (insert $600), 38–42 and 47, and have disapproved Nos. 8, 10, 11, 13, 14, 16, 17, 19, 20, 22, 23, 25, 26, 28, 29, 31–36, 43–46 and 48–53. Of those submitted by the defendants, I have approved Nos. 1–12, 14–16, 18–20 and 22–25 and have disapproved Nos. 13, 17, 21 and 26–32. The first and third of defendants' conclusions of law are approved; the rest are disapproved.

The following additional findings are made: (I) That the plaintiff did not hold a position of an executive or administrative nature at any time prior to April 1, 1944.

(II) That she did not work overtime after April 1, 1944.

(III) That she is entitled to judgment against L. F. Dietz & Associates, Incorporated, a New York corporation, in the amount of $1,088.12, together with an attorney's fee as fixed in No. 37 of the plaintiff's requests to find, and her costs and disbursements, pursuant to the cited statute.

Settle judgment on notice.

(On motion to reopen, December 18, 1945.)

The motion to reopen is denied and the stay vacated. The papers submitted by the plaintiff in support of the motion reveal no reason for changing the result reached in the preceding opinion in this case. Directed principally at the dismissal of the cause of action against L. F. Dietz and Associates, Inc., a New Jersey corporation, the papers fall short of showing any error in my conclusion that after plaintiff began working for that corporation on April 1, 1944, she had, through the death of Mr. Gartner, attained exempt status. The moving papers state the discovery, since the trial, of time cards punched by the plaintiff while working for the New Jersey corporation; but the papers in opposition show that during a part of this period officers and exempt employees were requested to punch

a time clock " for the purpose of cost accounting procedures " and not for the purpose of computing their compensation.

I have examined *Watkins* v. *Hudson Coal Co.* (151 F. 2d 311) and the other authorities in plaintiff's brief, but find therein no reason for disapproving the formula under which plaintiff's overtime was calculated and paid from the start of her employment until April 30, 1943, and under which I directed that she likewise be paid overtime from May 1, 1943, through March 31, 1944. The formula at bar is not open to attack on any of the grounds set forth in that case for rejecting an employer's formula.

The defendants have conceded that the formula used was modified after April 1, 1944. What formula was then adopted is academic as far as the plaintiff is concerned for reasons stated in my former opinion. But in the interest of truth and accuracy, I will modify the opinion by withdrawing my approval of defendants' proposed finding of fact No. 8, and disapproving it instead.

Let counsel proceed with the settlement of the judgment as heretofore ordered. They may also, if they desire, submit an order disposing of the motion to reopen, with appropriate references to the papers before me when that motion was argued.